IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Christopher Love Williams, #281434, ) | |
| ) | Civil Action No. 6:07-2409-DCN-WMC |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT OF MAGISTRATE JUDGE** |
| ) | |
| Jon Ozmint, Director of SCDC, et al., ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the court on the plaintiff's motion for summary judgment and the motion for summary judgment of the defendants who are present or former employees of the South Carolina Department of Corrections ("SCDC"). The plaintiff, who is proceeding *pro se*, filed this action pursuant to Title 42, United States Code, Section 1983, against over 60 defendants, claiming that his constitutional rights have been violated.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983.

The plaintiff filed a motion for summary judgment on February 12, 2008. The SCDC defendants filed their opposition to the motion on March 4, 2008. The SCDC defendants filed a motion for summary judgment on February 25, 2008. By order filed February 27, 2008, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure. The plaintiff filed his opposition to the motion on May 2, 2008.

## FACTS PRESENTED

The plaintiff is currently incarcerated at the Kirkland Correctional Institution Maximum Security Unit, an SCDC facility located in Columbia, South Carolina. He is serving a life sentence following his convictions on charges of murder, kidnaping, and assault with intent to kill. Summary judgment was recently granted to defendant American Amenities, Inc. The plaintiff alleges numerous violations of his constitutional rights against the remaining 60 or so defendants, all of whom are current or former employees of the SCDC.

## APPLICABLE LAW AND ANALYSIS

Federal Rule of Civil Procedure 56(c) states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Furthermore, Rule 56(e) provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e). Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action that he bears the burden of adducing at a trial on the merits.

***Statute of Limitations***

The statute of limitations for the claims alleged by the plaintiff under Section 1983 is three years. Accordingly, all claims arising more than three years prior to the *Houston v. Lack*, 487 U.S. 266 (1988), delivery date of the plaintiff's complaint, which is July 16, 2007, are barred by the statute of limitations. Any claims under the South Carolina

3

Tort Claims Act are barred to the extent the claims arose more than two years prior to July 16, 2007. S.C. Code Ann. § 15-78-110.

***Excessive Force***

The plaintiff alleges that on March 31, 2006, while he was incarcerated at Lieber Correctional Institution ("Lieber"), he was "gassed" after he struck defendant Mathis, a corrections officer at Lieber. He claims that he laid down on his stomach, and defendant Smith put handcuffs on him. Subsequently, defendant Mathis jumped onto the plaintiff's back and began choking him. The plaintiff claims he suffered serious injury to his throat, neck, and back (comp. 6-7). The plaintiff states that two to three hours later he was placed in the restraint chair. He claims that he had recently had surgery on his knee, and he was physically incapable of handling such punishment. He claims he was placed in the restraint chair for six to eight hours, which caused him pain to his shoulder (comp. 7-8). He further states that he was then placed on recreation restriction for 20 days, which resulted in leg pain (comp. 10).

The plaintiff also claims that on June 22, 2006, while he was incarcerated at Perry Correctional Institution ("Perry"), he was restrained by three correctional officers, he was handcuffed, and his clothing was cut off. He claims he was then "hobble chained" while he was naked (comp. 27-28). He states he was taken to the Maximum Security Unit ("MSU") at Kirkland Correctional Institution ("Kirkland") on that same date, and he was strip searched and forced to walk naked in front of other prisoners (comp. 28-29). According to the affidavit of Roger Fleming, a correctional officer at Perry, he, along with another officer, transported the plaintiff to the MSU at Kirkland. According to Fleming, the plaintiff was relocated to the MSU because earlier that day he removed his handcuffs and attacked a sergeant at Perry. The plaintiff was strip searched and escorted to a cell (Fleming aff.; *see* Janice Kenealy aff.). John Price, an officer at Kirkland, received the plaintiff into the MSU.

4

Price testified that he followed all applicable SCDC policies and procedures during the process (Price aff.).

The Eighth Amendment expressly prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. To succeed on any Eighth Amendment claim for cruel and unusual punishment, a prisoner must prove: (1) objectively, the deprivation of a basic human need was sufficiently serious, and (2) subjectively, the prison officials acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). "'[I]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock.'" *Moore v. Winebrenner*, 927 F.2d 1312, 1316 (4th Cir. 1991) (quoting *Whitley v. Albers,* 475 U.S. 312, 319 (1986)). Moreover, the United States Supreme Court has noted that "not ... every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (internal citation omitted). The Court further stated, "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* use of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Id.* at 9-10. The "core judicial inquiry" in evaluating an excessive force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 7.

The plaintiff acknowledges in his complaint that he assaulted SCDC officers or employees on more than one occasion. The evidence presented shows that the plaintiff's conduct necessitated the use of force by the defendants. It appears that any force used by the defendants was applied "in a good faith effort to maintain or restore discipline" and not "maliciously and sadistically for the very purpose of causing harm." *Whitley,* 475

U.S. at 321 (citation omitted). Further, as argued by the defendants, the plaintiff's injuries, if any, were at most *de minimis.* The medical records submitted by the defendants show that the plaintiff was seen by medical staff following the use of force incidents described in the plaintiff's complaint. However, there is no evidence of anything more than *de minimis* injuries to the plaintiff. *Norman v. Taylor*, 25 F.3d 1259, 1263 (4th Cir. 1994) (holding that "absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is *de minimis*."). After the March 31, 2006, incident, the plaintiff was seen by a nurse who noted no injuries. When he was checked several days later, the plaintiff complained of shoulder pain, which was treated with Motrin (Beinor aff., medical records 18-19). On June 22, 2006, after chemical munitions had been used on him, the plaintiff was seen by a nurse. The plaintiff was allowed to shower, and no bruises, lacerations, or other injuries were noted. The plaintiff was also checked while he was in the restraint chair, and no problems were noted. He was checked again the next day upon his transfer to the MSU at Kirkland. Again, no problems were noted (Beinor aff., medical records 15-16). Based upon the foregoing, the plaintiff's injuries, if any, were clearly *de minimis*. Further, the plaintiff has failed to prove that the prison officials acted with a sufficiently culpable state of mind. Accordingly, the plaintiff's excessive force claims fail.

*Medical Care*

The plaintiff claims that after he was "gassed" and assaulted on March 31, 2006, the defendants were deliberately indifferent to his medical needs. Specifically, he claims he was denied a shower so that he could wash off the chemical munitions. He claims he suffered breathing problems, burning in his eyes, and skin irritation (comp. 7). Deliberate indifference by prison personnel to an inmate's serious illness or injury is actionable under 42 U.S.C. § 1983 as constituting cruel and unusual punishment

6

contravening the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976). The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Id.* at 102. This obligation arises from an inmate's complete dependence upon prison medical staff to provide essential medical services. *Id.* The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. To establish that a healthcare provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. *See Rogers v. Evans*, 792 F.2d 1052, 1058 (5th Cir. 1986). "Deliberate indifference is a very high standard – a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999).

In order to establish that he has been subjected to cruel and unusual punishment, the plaintiff must prove that the deprivation of a basic human need was, objectively, sufficiently serious and that, subjectively, the officials acted with a sufficiently culpable state of mind. *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir.1993)(quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). What suffices as a serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). Courts have traditionally attempted to avoid intervening and dictating the medical care of prisoners. As noted by the Fourth Circuit, courts should "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment. . . .[which] remains a question of sound professional judgment." *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977).

With respect to the subjective component of deliberate indifference, while an "express intent to inflict unnecessary pain is not required . . . [i]t is obduracy and

7

wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the cruel and unusual punishment clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Mere disagreement between an inmate and a physician over the appropriate form of treatment is not an actionable constitutional claim. *Wright v. Collins*, 766 F2d 841, 849 (4th Cir. 1975).

As noted above, the medical records show that after the March 31, 2006, incident, the plaintiff was seen by a nurse who noted no injuries. When he was checked several days later, the plaintiff complained of shoulder pain, which was treated with Motrin (Beinor aff., medical records 18-19). The plaintiff's medical records indicate that he has been seen on numerous occasions by the medical staffs of the facilities in which he was housed. The records also show that his medical complaints have been documented and addressed in a sound manner. The plaintiff has failed to show any evidence that any defendant disregarded any serious medical condition or need, or that any defendant failed to timely and appropriately observe, assess, or treat his complaints (Beinor aff., medical records). As argued by the defendants, at most, the plaintiff had a disagreement with medical staff as to the proper treatment of the conditions alleged in the complaint. However, negligence or malpractice in medical services does not create a constitutional cause of action. *See Wright*, 766 F.2d at 849.

***Access to Courts***

The plaintiff claims that he has been denied law books and legal materials during his stay at the MSU at Kirkland (comp. 31-32). The United States Constitution guarantees prisoners the right of meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817 (1977). In *Bounds*, the Supreme Court held that the right of access imposes an affirmative duty on prison officials to assist inmates in preparing and filing legal papers, either by establishing an adequate law library or by providing adequate assistance from

persons trained in the law. *Id*. at 828. In *Lewis v. Casey*, 518 U.S. 343, 349 (1996), the Supreme Court held that a prisoner must show some actual injury resulting from a denial of access in order to allege a constitutional violation. This requirement can be satisfied by demonstrating that a non-frivolous legal claim was frustrated or impeded by some actual deprivation of access. *Id.* at 352-53. A claim for failure to provide access to the courts must be pleaded with specificity. *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996).

As this court noted in addressing the plaintiff's prior motions related to this issue, his complaints regarding the availability of certain legal materials do not meet the "actual injury" requirement. The plaintiff has been able to file his complaint and related motions. He has cited case law in support of his motions. In his memorandum opposing the current motion, which is 56 pages long, the plaintiff cites numerous cases. As argued by the defendants, the plaintiff has simply failed to "demonstrate that the alleged shortcomings in the library or legal assistance program have hindered . . . his efforts to pursue a nonfrivolous legal claim." *Lewis*, 518 U.S. at 33. The plaintiff has failed to demonstrate that he will suffer some irreparable harm in the absence of the injunctive relief he seeks, that there is a likelihood of success on the merits of his claims, or that the public interest will be promoted by the granting of injunctive relief. Further, the plaintiff has failed to show that he has been denied the relief requested in his motion.

### *Access to Publications and Photographs*

The plaintiff alleges that his First Amendment rights have been violated because of restrictions on his ability to receive or possess certain publications and other similar materials. The plaintiff's motion for summary judgment addresses only this cause of action.

The United States Supreme Court addressed this very issue in a case substantially similar to the present one. *Beard v. Banks*, 548 U.S. 521 (2006). In *Beard*,

the Court upheld the granting of summary judgment to the Pennsylvania Department of Corrections on a constitutional challenge to the Department's restrictions on possession of newspapers, magazines, and photographs by inmates in the Department's most restrictive unit, reserved for the most incorrigible and recalcitrant inmates. The policies and procedures at issue in *Beard* are essentially identical to those relevant to the inmates assigned to the MSU (def. resp. m.s.j., ex. 1, SCDC Policy and Procedure No. OP-22.11, "Maximum Security Unit"). Inmates assigned to the MSU include those who have demonstrated an unwillingness to conform to the rules and regulations of a Special Management Unit and those who have been charged with violent criminal behavior committed while in the general population. Denial of certain property, such as publications and photographs, which inmates at other custody levels may enjoy, serves functions related to safety and behavioral incentives. These are the same types of justifications for the restrictions at issue in *Beard*. Because the plaintiff cannot show that the restrictions at issue do not satisfy the requirements set forth in *Turner v. Safley*, 482 U. S. 78, 89-91 (1987), with regard to the constitutionality of the prison regulations in question, in light of the substantial deference owed by courts to the professional judgment of prison administrators in such matters, his claims must fail. *See Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).

### *Grievances*

To the extent that the plaintiff alleges a claim regarding unanswered grievances or delays in answering grievances, the court notes that state inmates have "no entitlement to grievance procedures or access to any such procedure voluntarily established by a state." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.1994) (citations omitted); *Mitchell v. Murray*, 856 F.Supp. 289, 294 (E.D. Va.1994). "When the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the

government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance." *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991); *accord Adams*, 40 F.3d at 72. Assuming the defendants failed to answer some of the plaintiff's grievances, the plaintiff has asserted these claims in this action and obviously has not been denied redress or access to the courts.

### *Respondeat Superior*

Next, the defendants argue that the record fails to reflect personal involvement of certain defendants, including defendants Ozmint, Bazzle, Anthony, Burtt, McKie, and Tatarsky, and, further, the record does not show the elements necessary to establish a claim under a supervisory theory. This court agrees. The plaintiff has failed to allege that these individual defendants personally acted or failed to act in violation of his constitutional rights. The doctrine of *respondeat superior* generally is inapplicable to Section 1983 suits. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978); *Vinnedge v. Gibbs*, 550 F.2d 926, 928-29 (4th Cir. 1977). The plaintiff must establish three elements to hold a supervisor liable for a constitutional injury inflicted by a subordinate: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to people like the plaintiff; (2) the supervisor's response was so inadequate as to constitute deliberate indifference or tacit authorization of the subordinate's conduct; and (3) there is an "affirmative causal link" between the supervisor's inaction and the plaintiff's constitutional injury. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir.), *cert. denied*, 513 U.S. 813 (1994). The plaintiff has failed to show that the subordinates were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury. Further, there is no evidence that these defendants were indifferent to or authorized any such conduct. Accordingly, the

plaintiff has failed to state a claim against those defendants included in this action solely on the basis of the supervisory capacities of their positions within the SCDC.

***Qualified Immunity***

The defendants argue that they are entitled to qualified immunity as their conduct did not violate any clearly-established constitutional or statutory rights of which a reasonable person should have known. This court agrees. Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This qualified immunity is lost if an official violates a constitutional or statutory right of the plaintiff that was clearly established at the time of the alleged violation so that an objectively reasonable official in the defendants' position would have known of it. *Id.*

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998). The plaintiff has failed to demonstrate that the defendants violated any of his constitutional rights. Therefore, the defendants are entitled to qualified immunity.

*South Carolina Tort Claims Act*

If the complaint is construed to state a claim under the South Carolina Tort Claims Act, the claim should be dismissed as the plaintiff has failed to present any evidence that the defendants have failed to meet the "slight care" standard established in *Jackson v. SCDC*, 390 S.E.2d 467, 468 (S.C. Ct. App. 1989) (interpreting gross negligence as the failure to give "slight care"). Therefore, the alleged acts of the defendants fall within the exception to the waiver of immunity set forth in South Carolina Code Annotated Section 15-78-60(25).[1]

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, this court recommends that the SCDC defendants' motion for summary judgment (doc. 110) be granted and the plaintiff's motion for summary judgment (doc. 102) be denied. Should the district judge adopt this court's recommendation, the SCDC defendants' amended motion to dismiss (doc. 37) will be rendered moot.

s/William M. Catoe
United States Magistrate Judge

May 21, 2008

Greenville, South Carolina

---

[1] This section provides:

> The governmental entity is not liable for a loss resulting from:
> ***
> (25) responsibility or duty including but not limited to supervision, protection, control, confinement, or custody of any student, patient, prisoner, inmate, or client of any governmental entity, except when the responsibility or duty is exercised in a grossly negligent manner . . . .

S.C. Code Ann. § 15-78-60(25).

13