IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Christopher Love Williams, #281434, | ) | |
| | ) | C/A No. 6:07-2409-DCN-WMC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER and OPINION** |
| | ) | |
| Jon Ozmint, Director of SCDC, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the court on plaintiff's constitutional claims arising from his confinement at various institutions within the South Carolina Department of Corrections (SCDC). Plaintiff seeks relief from over sixty defendants pursuant to 42 U.S.C. § 1983. The court recently granted summary judgment to defendant American Amenities, Inc. Plaintiff and defendants have filed cross-motions for summary judgment on the remaining claims.[1] The record includes a report and recommendation of the United States Magistrate Judge made in accordance with 28 U.S.C. § 636(b)(1)(B). Plaintiff has filed objections to the report and recommendation. For the reasons set forth below, the court adopts the magistrate judge's report and recommendation and grants defendants' motion for summary judgment.

## I. STANDARD OF REVIEW

---

[1] Also before the court are plaintiff's motion for a temporary restraining order and defendants' amended motion to dismiss. Because the resolution of the summary judgment motions renders these other motions moot, the court does not address them.

This court must conduct a de novo review of any portion or portions of the magistrate judge's report to which an objection is made, and may accept, reject, or modify the recommendations contained therein. 28 U.S.C. § 636(b)(1). However, this court need not review any findings or recommendations to which neither party objects. Thomas v. Arn, 474 U.S. 140, 150 (1985). A party's failure to object constitutes an acceptance of the magistrate judge's findings and recommendations. United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984) (adopting interpretation of 28 U.S.C. § 636 which conditions appeal from district court's judgment on magistrate judge's recommendation on party's filing of objections with district court). A general objection which is not "'sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute'" is inadequate to obtain district court review. Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003) (quoting United States v. 2121 E. 30th Street, 73 F.3d 1057, 1060 (10th Cir. 1996)).

Summary judgment is appropriate when, after considering the full evidentiary record, there are no genuine issues of material fact. Fed. R. Civ. P. 56(c). When the party moving for summary judgment does not bear the ultimate burden of persuasion at trial, the burden for summary judgment may be discharged by "pointing out to the court that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Evidence should be viewed in the light most favorable to the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, a "mere scintilla" of evidence will not preclude summary judgment. The court's inquiry is "not whether there is literally no evidence, but whether there is any

[evidence] upon which a jury could properly . . . find a verdict for the party" resisting summary judgment. Id. at 251. Verified complaints by pro se prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir.1991).

## II.  PRO SE PETITIONS

Plaintiff is proceeding pro se in this case. Pro se complaints should be construed liberally by this court and are held to a less stringent standard than those drafted by attorneys. See Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), cert. denied, 439 U.S. 970 (1978). A federal district court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case. See Hughes v. Rowe, 449 U.S. 5, 9 (1980). Liberal construction, however, does not mean that the court can ignore a clear failure in the pleading to allege facts that set forth a claim cognizable in a federal district court. See Weller v. Dep't of Social Services, 901 F.2d 387, 390-91 (4th Cir. 1990).

## III.  ANALYSIS

### A.    Excessive Force

The Eighth Amendment expressly prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. "It not only out-laws excessive sentences but also protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir.1996); see Wilson v. Seiter, 501 U.S. 294, 298 (1991); Estelle v. Gamble, 429 U.S. 97, 104 (1976). To succeed on any Eighth

Amendment claim for cruel and unusual punishment, a prisoner must prove: (1) objectively, the deprivation of a basic human need was sufficiently serious, and (2) subjectively, the prison officials acted with a "sufficiently culpable state of mind." Wilson, 501 U.S. at 298; Williams, 77 F.3d at 761.  When evaluating an excessive force claim, the proper inquiry is whether the force applied was "in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  Whitley v. Albers, 475 U.S. 312, 320 (1986).

While they must always adhere to the strictures of the Eighth Amendment, prison officials should enjoy latitude in taking preventive measures to maintain the safety of prison employees who come in contact with inmates.  The Supreme Court has clearly recognized the danger of overstepping the boundaries of judicial review in this area:

> "Prison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."  That deference extends to a prison security measure taken in response to an actual confrontation with riotous inmates, just as it does to prophylactic or preventive measures intended to reduce the incidence of these or any other breaches of prison discipline.  It does not insulate from review actions taken in bad faith and for no legitimate purpose, but it requires that neither judge nor jury freely substitute their judgment for that of officials who have made a considered choice.

Whitley, 475 U.S. at 321-22 (quoting Bell v. Wolfish, 441 U.S. 520, 547 (1979)).

The objective element of an excessive force claim requires more than a de minimis use of force.  The Supreme Court has forbid recovery based on de minimis force, unless that use of force is "repugnant to the conscience of mankind."  Hudson v.

McMillian, 503 U.S. 1, 9-10 (1992) (internal quotation marks omitted).  De minimis injury serves as evidence of de minimis force.  Norman v. Taylor, 25 F.3d 1259, 1262-63 (4th Cir. 1994).  In Norman, the Fourth Circuit Court of Appeals sitting en banc recognized a bright-line rule, derived from the Supreme Court's jurisprudence, that de minimis injury defeats a plaintiff's excessive force claim "absent the most extraordinary circumstances."  Id. at 1263.  Even some physical manifestations of injury can be de minimis.  For example, temporary swelling and irritation are considered de minimis.  Taylor v. McDuffie, 155 F.3d 479, 484 (4th Cir. 1996).

In addition to the March 31, 2006, and June 22, 2006 incidents detailed in the magistrate judge's report, plaintiff also alleges instances of excessive force occurred on July 19, 2005, and February 27, 2006, which both involved the spraying of chemical munitions on plaintiff in response to a confrontation with a corrections officer.  As the magistrate judge noted, plaintiff acknowledges his various assaults on and altercations with corrections officers.  In all the instances of excessive force alleged, plaintiff's own conduct necessitated the use of force by the defendants, and, taking the evidence in the light most favorable to plaintiff, he has failed to show the required malicious intent to satisfy the subjective prong of these claims.

Moreover, even if plaintiff's evidence could be construed to satisfy the subjective prong, his excessive force claims still fail because plaintiff does not allege and the evidence does not show more than de minimis injury.  The most plaintiff has alleged is pain, which the court finds in these instances did not result from force that was "repugnant to the conscience of mankind."  Norman, 25 F.3d at 1263.  Further, the

medical records submitted by defendants show no injuries, much less de minimis injuries, resulting from the alleged instances of excessive force. The medical entry for July 19, 2005, notes no injuries and reflects that plaintiff said to medical staff, "I don't need any medical treatment." Medical entries for February 27, March 31, and June 22, 2006, likewise make no mention of any injuries at all. Having shown, at best, de minimis injury, plaintiff's excessive force claims fail, and defendants are entitled to summary judgment.

### B.    Inadequate Medical Care

In order to establish a violation of the Eighth Amendment for inadequate medical care, a plaintiff must show that the defendants were deliberately indifferent to his serious medical needs. Wilson, 501 U.S. at 297. "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990) (citations omitted). "Deliberate indifference requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care." Young v. City of Mt. Ranier, 238 F.3d 567, 575-76 (4th Cir. 2001). "Deliberate indifference is a very high standard–a showing of mere negligence will not meet it." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999). Indeed, mere negligence or malpractice does not violate the Eighth Amendment. Estelle, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a

prisoner."). Therefore, incorrect medical treatment, such as an incorrect diagnosis, is not actionable under 42 U.S.C. § 1983. Miltier, 896 F.2d at 851.

The type and amount of medical care an inmate receives is discretionary. See Brown v. Thompson, 868 F.Supp. 326 (S.D. Ga. 1994). The mere fact that a prisoner may believe he had a more serious injury or that he required better treatment does not establish a constitutional violation. See, e.g., Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975). Although the Constitution requires that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee a prisoner receive the treatment of his choice. Jackson v. Fair, 846 F.2d 811, 817-18 (1st Cir. 1988). It follows, then, that disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

In the context of alleged indifference to serious medical needs, in order to state a § 1983 claim, the plaintiff must allege that he suffered specific injury as a result of the specific conduct of a defendant, and show an affirmative link between the injury and that conduct. Rizzo v. Goode, 423 U.S. 362, 371-72 (1976). Significantly, § 1983 does not impose liability for violations of duties of care arising under state law. DeShaney v. Winnebago County Dep't of Soc. Services, 489 U.S. 189 (1989).

Plaintiff has alleged three instances of constitutionally inadequate medical care. One relates to a knee injury he allegedly suffered while exercising in his cell. The other two relate to allegedly inadequate care he received following defendants' alleged uses of excessive force. All of plaintiff's medical care claims fail because the record lacks any

evidence that any of the defendants acted with deliberate indifference to a serious medical need of plaintiff. Dr. Beinor's affidavit and plaintiff's medical records reveal medical attention in response to the incidents of which he now complains. Moreover, the medical records show plaintiff received appropriate medical attention at all times relevant to this action. Plaintiff has failed to show that any defendant deliberately disregarded any serious medical need. At best, plaintiff's evidence points to his disagreement with the medical staff over plaintiff's specific course of care or the timeliness of his treatment. However, plaintiff's disappointment with his level of care falls far short of the deliberate indifference standard. Defendants are therefore entitled to summary judgment on plaintiff's inadequate medical care claims.

### C. Access to Courts

It is well settled that inmates have a right of access to the courts to give them a reasonably adequate opportunity to present their claims. Bounds v. Smith, 430 U.S. 817, 825 (1977). Such access must be "adequate, effective and meaningful." Id. at 822. The right of access imposes an affirmative duty on prison officials to assist inmates in preparing and filing legal papers, either by establishing an adequate law library or by providing adequate assistance from people trained in the law. Id. at 828. To state a claim of violation of this right of access, a prisoner must show some interference with his right or some deficiency in the legal resources available to him, as well as evidence of actual injury or specific harm related to litigation. Lewis v. Casey, 518 U.S. 343, 349 (1996). A plaintiff can meet the actual injury requirement by showing that a non-frivolous legal claim was frustrated or impeded by some actual deprivation of access. Id. at 352-53. A

claim for failure to provide access to the courts must be pleaded with specificity. Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996).

Plaintiff alleges that defendants have stymied his access to the court system. Specifically, he complains of the prison's inadequate law library and lack of photocopying service for legal documents. Plaintiff's claim fails because he has not presented any evidence of the alleged inadequacy, and, in any event, he does not meet the "actual injury" requirement. Judging from the docket in this case, plaintiff has had full access to the courts. During the course of this litigation, plaintiff has filed, in addition to his extensive complaint, numerous motions, responses, and objections. He has also filed affidavits of other inmates as exhibits. Throughout his various filings, he cites numerous cases. Moreover, despite his alleged lack of photocopying ability, he has submitted several photocopied exhibits. Thus, the record lacks any evidence that plaintiff's access to legal materials and the courts falls short of the constitutional standard. What is more, plaintiff has failed to show any actual injury resulting from his alleged denial of access. Therefore, this claim fails, and defendants are entitled to summary judgment.[2]

### D.  Access to Publications and Photographs

Inmates clearly retain their First Amendment rights in prison.  See  O'Lone v.

---

[2] To the extent plaintiff alleges inadequate access to grievance procedures, the court notes that state inmates have "no entitlement to grievance procedures or access to any such procedure voluntarily established by a state." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) (citations omitted). Assuming defendants failed to respond to some of plaintiff's grievances, plaintiff has suffered no constitutional harm as he has raised any such issues in this action.

Estate of Shabazz, 482 U.S. 342, 348 (1987).  However, in Turner v. Safley, 482 U.S. 78 (1987), the Supreme Court found that a prison regulation infringing on an inmate's constitutional rights is valid so long as it is reasonably related to a legitimate penological interest.  Id. at 89.  The Court also recognized that deference should be given to the decisions of prison administrators, especially when those decisions deal with issues of prison safety and security.  Id.

In Turner, the Court identified four factors to consider: (1) whether the regulation is rationally related to a legitimate and neutral governmental objective; (2) whether there are alternative avenues that remain open to the inmates to exercise the right; (3) the impact that accommodating the asserted right will have on other guards and prisoners and on the allocation of prison resources; and (4) whether the existence of easy and obvious alternatives indicates that the regulation is an exaggerated response by prison officials. Id. at 89-90.

In Beard v. Banks, 548 U.S. 521 (2006), the Court recently upheld a policy similar to the SCDC's policy for maximum security unit (MSU) inmates.  In Beard, the Court concluded that a prison policy prohibiting inmates' access to newspapers, magazines, and photographs did not violate the First Amendment.  The Court determined the reason for the policy, which was to provide an incentive to promote better inmate behavior, satisfied the Turner standard.  Id. at 531-32.

Plaintiff contends that the SCDC policy limiting access to books, magazines, and photographs for inmates in the MSU violates the First Amendment.  Paragraphs thirteen, fourteen, and sixteen of SCDC Policy No. OP-22.11 govern the property that inmates

housed in MSU may possess. Pursuant to the most restrictive provisions of this policy, an MSU inmate may possess his primary religious book, such as a Bible or Qur'an, one book or magazine at a time which must be obtained through library services, and one box of legal materials. The policy prohibits photographs, as well as periodicals received through subscription.

The court notes that the SCDC policy does not deprive the plaintiff of all books, magazines, and reading material. It merely limits the amount he may possess. The plaintiff can possess his primary religious book and legal materials. Additionally, he can possess at least one book or magazine from library services. The plaintiff is not subject to a total ban on all reading materials. Moreover, as in Beard, the SCDC policy is rationally related to a legitimate and neutral governmental objective. As the policy states, the MSU "will house those inmates requiring the most intense levels of supervision and monitoring." Thus, MSU is reserved for the most recalcitrant inmates. However, as the tiered privileges system within MSU indicates, prison officials have adopted a rational means of offering obdurate inmates incentives, in the form of more access to property such as periodicals, to improve their behavior. Based on the foregoing, the court concludes that the SCDC policy is reasonably related to a legitimate penological goal, and defendants are entitled to summary judgment on this claim.[3]

### E. Defective Toothpaste and Deodorant

---

[3] The court recognizes the same or a similar policy at issue here has been examined by several district judges in this district and found to be constitutional. See, e.g., Koon v. Ozmint, 2007 WL 1486067 (D.S.C. 2007); Wiles v. Ozmint, 2006 WL 2260136 (D.S.C. 2006); Corey v. Reich, 2004 WL 3090234 (D.S.C. 2004).

11

Plaintiff alleges that defendants have harmed him by distributing "poisonous" toothpaste and deodorant. This claim must fail for one of the same reasons it failed against defendant American Amenities, Inc. Namely, plaintiff has failed to offer more than mere conclusory allegations of defendants' alleged harmful conduct. Nowhere does the record reflect any evidence of contaminated ingredients in these products or deleterious effects from these alleged harmful substances. As such, plaintiff has failed to show any genuine issue of material fact, and the remaining defendants are entitled to summary judgment on this claim.

### F. Seizure of Property, Stripped Cell, and Strip Searches

Plaintiff contends defendants subjected him to strip searches, seized his property, and placed him in a stripped cell in violation of his constitutional rights. Plaintiffs claims must be considered in the context in which the alleged violations occurred. The alleged instances of harm occurred in response to disturbances caused by plaintiff. "[T]he Constitution does not mandate comfortable prisons, and prisons . . . which house persons convicted of serious crimes, cannot be free of discomfort." Rhodes v. Chapman, 452 U.S. 337, 349 (1981). "To the extent such conditions are restrictive and even harsh, they are part of the penalty that criminals pay for their offenses against society." Id. at 338. Inmates do not enjoy a right to be free from all indignities. Numerous courts have even upheld routine strip searches of segregated inmates based upon security concerns. See, e.g., Rickman v. Avanti, 854 F.2d 327, 328 (9th Cir. 1988) (prison policy requiring prisoners in segregation unit to submit to strip searches when leaving their cells for recreation, medical treatment, visitation, and use of law library was found constitutional);

Goff v. Nix, 803 F.2d 358, 370-71 (8th Cir. 1986), cert. denied, 484 U.S. 835 (1987) (visual body cavity search of segregation unit inmates before and after going to exercise area to prevent passage of contraband constitutional); Campbell v. Miller 787 F.2d 217, 228 (7th Cir. 1986), cert. denied, 479 U.S. 1019 (1986) (permitting visual body cavity searches of high security inmates being transported to law library).

Here, per SCDC Policy No. OP-22.11 para. 22, MSU inmates are subject to routine strip searches when they enter or leave their cells and at any other time when suspicion exists. Regarding seizure of property, SCDC officials have restricted the types and amount of property MSU inmates can have to promote legitimate penological objectives. Plaintiff has produced no evidence that defendants' actions in these alleged instances, or SCDC policies in general, run afoul of constitutional standards. As such, defendants' motion for summary judgment as to these claims is granted.

### G. Deprivation of Food

Allegations of inadequate prison food service may be sufficient to state a cognizable claim under § 1983, so long as the deprivation is serious. Bolding v. Holshouser, 575 F.2d 461, 465 (4th Cir. 1978); French v. Owens, 777 F.2d 1250, 1255 (7th Cir. 1985), cert. denied, 479 U.S. 817 (1986) (finding that inmates are entitled to receive nutritionally adequate food). On the other hand, occasional, short-lived problems with prison food service and isolated instances of inmates missing a meal or two do not implicate the Eighth Amendment. See Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) ("The fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional

deprivation."); Islam v. Jackson, 782 F.Supp. 1111, 1114 (E.D. Va. 1992) (finding that inmate's missing one meal as isolated event did not state Eighth Amendment violation).

Plaintiff apparently alleges that for a period of time he did not receive a "no meat" meal he had earlier been receiving. Plaintiff also appears to allege, when viewed in the light most favorable to him, that he was deprived of one meal altogether. Neither allegation rises to the level of a constitutional violation. Plaintiff does not allege he received nutritionally inadequate food. Nor does plaintiff allege that the food caused him any medical problems or frustrated his ability to practice his religion. Any problem with plaintiff's food service was not sufficiently serious to equal a deprivation of constitutional magnitude. Therefore, defendants are entitled to summary judgment.

### H. Denial of Fresh Air/Recreation

To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297-99 (1991). "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." Rish v. Johnson, 131 F.3d 1092, 1096 (4th Cir. 1997). In terms of inmate recreation and exercise, "'[i]t is generally recognized that a total or near-total deprivation of exercise or recreational opportunity, without penological justification, violates Eighth Amendment guarantees.'" Mitchell v. Rice, 954 F.2d 187, 192 (4th Cir. 1992) (quoting Patterson v. Mintzes, 717 F.2d 284, 289 (6th Cir. 1983)). Although it is

well established that there is a constitutional necessity for some out-of-cell exercise, it is equally recognized that penological considerations may justify restrictions. Mitchell, 954 F.2d at 192.

Plaintiff alleges he was placed on recreation restriction for twenty days, during which he "was only allowed out to take a shower."[4] In the light most favorable to plaintiff, this claim alleges plaintiff spent twenty days in his cell, only leaving it to take showers. The court notes that the alleged recreation restriction corresponds directly to an assault on an officer to which plaintiff has admitted. Even putting defendants' possible penological justification aside, plaintiff's claim still fails because he has not shown the type of extreme deprivation the Constitution prohibits. The temporary deprivation of relatively short duration at issue here does not rise to the level of a constitutional violation. Therefore, defendants are entitled to summary judgment.

### I. Qualified Immunity

Qualified immunity "shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Mazuz v. Maryland, 442 F.3d 217, 225 (4th Cir. 2006). This theory "protects law enforcement officers from 'bad guesses in gray areas' and ensures that they are liable only for 'transgressing bright lines.'" Waterman v. Batton, 393 F.3d 471, 476 (4th Cir.

---

[4] Plaintiff also alleges he was denied "outdoor exercise (walking)" for eight months. He does not, however, allege he was denied all out-of-cell recreational or exercise opportunity for those eight months. Plaintiff limits his allegation of total recreation and exercise deprivation to twenty days.

2005) (quoting Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992)). In considering the applicability of qualified immunity, the court must "(1) identifi[y] . . . the specific right allegedly violated; (2) determin[e] whether at the time of the alleged violation the right was clearly established; and (3) if so, then determin[e] whether a reasonable person in the officer's position would have known that doing what he did would violate that right." Pritchett v. Alford, 973 F.2d 307, 312 (4th Cir. 1992).

Here, defendants are entitled to qualified immunity because plaintiff has failed to establish the violation of any of his constitutional rights. Furthermore, even assuming sufficient evidence exists to show defendants violated plaintiff's constitutional rights, the record lacks any evidence to show that any such right was clearly established at the time of the alleged violation, and that a reasonable officer would have known his conduct was unlawful.

### J. Respondeat Superior

It is well settled that liability in civil rights cases brought under § 1983 may not be premised upon a respondeat superior theory. Polk County v. Dodson, 454 U.S. 312, 325-26 (1981); Monell v. Dep't of Soc. Services of City of New York, 436 U.S. 658, 694 (1978). The plaintiff must establish three elements to hold a supervisor liable for a constitutional injury inflicted by a subordinate: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to people like the plaintiff; (2) the supervisor's response was so inadequate as to constitute deliberate indifference or tacit authorization of the subordinate's conduct; and (3) there is an "affirmative causal

link" between the supervisor's inaction and the plaintiff's constitutional injury.  Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994), cert. denied, 513 U.S. 813 (1994).

Plaintiff has not shown that any subordinate engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury.  Even if plaintiff had made such a showing, nothing in the record shows any supervisory defendants were indifferent to or authorized such conduct.  Therefore, the defendants whose liability is premised solely on their supervisory roles are entitled to summary judgment.

## IV.  CONCLUSION

For the foregoing reasons and those stated by the magistrate judge, it is therefore **ORDERED** that defendants' motion for summary judgment is **GRANTED** and plaintiff's motion for summary judgment is **DENIED**.  Consequently, plaintiff's outstanding motion for a temporary restraining order and defendants' outstanding amended motion to dismiss are moot.

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**September 22, 2008**
**Charleston, South Carolina**